IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHEPARD JOHNSON,

          Plaintiff,                 No. CIV S-10-1968 GEB GGH PS

     vs.

CHESTER MITCHELL, et al.,

                               <u>ORDER AND</u>
                               <u>FINDINGS AND RECOMMENDATIONS</u>

          Defendants.

_____/

        Plaintiff first initiated this diversity action for malicious prosecution and civil conspiracy to commit malicious prosecution on July 23, 2010 and is currently proceeding with the third amended complaint filed on November 6, 2011. (<u>See</u> Dkt. No. 119.)

        Presently pending before the court is defendant Martha Thomas's motion to dismiss plaintiff's third amended complaint for lack of personal jurisdiction, originally filed on December 8, 2011 and noticed for hearing on February 9, 2012. (Dkt. Nos. 131, 141.) In response to that motion, plaintiff filed a motion for leave to conduct jurisdictional discovery, or in the alternative a 30-day extension to respond to defendant Thomas's motion to dismiss, which came on regularly for hearing on January 26, 2012. (Dkt. No. 143.) After hearing oral argument, the court vacated the February 9, 2012 hearing on defendant Thomas's motion to dismiss, granted plaintiff leave to file a response to defendant Thomas's motion no later than February 16, 2012, and permitted defendant Thomas to file a reply brief by February 23, 2012, after which the

1

motion was submitted on the record. (See Dkt. No. 154.) Plaintiff's motion for jurisdictional discovery regarding defendant Thomas was also taken under submission. (Id.) After extensive briefing by the parties, these motions are now ripe for resolution.

However, before the court can reach the merits of the above-mentioned motions, the court is compelled to address the issues raised with respect to subject matter jurisdiction. On January 26, 2012, the court also conducted an initial status conference. In the joint status report, a group of defendants indicated that they dispute federal subject matter jurisdiction based on plaintiff's joinder of U.S. citizen defendants domiciled abroad. (Dkt. No. 149 at 3.) After extensive discussion on the record at the status conference, the court granted plaintiff until February 16, 2012 to either (a) file a brief, limited to 10 pages, addressing the propriety of subject matter jurisdiction in this case, or (b) move to dismiss the U.S. citizen defendants domiciled abroad pursuant to Fed. R. Civ. P. 21. (Dkt. No. 154.) Plaintiff filed a brief regarding subject matter jurisdiction on February 16, 2012 (dkt. no. 157) and another "corrected brief" regarding subject matter jurisdiction on February 21, 2012 (dkt. no. 162).

Finally, plaintiff also filed a response to the court's order to show cause why several defendants should not be dismissed from the action pursuant to Fed. R. Civ. P. 41(b) for plaintiff's failure to prosecute and follow court orders regarding service of process. (Dkt. Nos. 154, 167.)

After consideration of the briefing submitted, the parties' oral arguments, the court's record in this matter, and the applicable law, the court FINDS AS FOLLOWS:

BACKGROUND

Before proceeding to the motions and substantive issues raised, a review of the background facts and procedural history is appropriate.

Factual Background

Plaintiff, a citizen of California, is a real estate developer who claims that the defendants purchased lots for a planned unit development on an island in Panama. (See Third

Amended Complaint, Dkt. No. 119 ["TAC"] at 2-3.)  Plaintiff alleges that defendants did not want to be subject to the Conditions, Covenants, and Restrictions ("CC&Rs") for the development, and so rather than settling the matter by way of a contract dispute, defendants "banded together and launched a barrage of deliberate falsehoods, and engaged in wrongful conduct...aimed at upsetting and intimidating him, destroying his reputation and business, disrupting relations with other lot owners, and discouraging prospective purchasers."  (TAC at 3-4.)  According to plaintiff, defendants' campaign of defamation was conducted primarily over the Internet.  (TAC at 4.)  In particular, plaintiff alleges that defendants "posted in excess of 150 messages on the Internet by and through an account with an internet provider based in California and on sites maintained within the State of California...to attract and solicit fellow conspirators."  (TAC at 16.)  Defendants also allegedly initiated criminal proceedings against him in the Panama courts which were purportedly later dismissed, and which are the subject of plaintiff's malicious prosecution and conspiracy claims in this litigation.  (TAC at 4-6.)  Plaintiff alleges that he was forced to file for bankruptcy on July 3, 2007 "due in significant part to the false criminal complaints filed by Defendants."  (TAC at 5.)

<u>Procedural Background</u>

Plaintiff initially filed this lawsuit on July 23, 2010.  (Dkt. No. 1.)  On October 28, 2010, plaintiff filed a 41-page first amended complaint joining additional defendants and terminating claims against one defendant.  (Dkt. No. 5.)  Subsequently, on December 23, 2010, plaintiff requested entry of default as to various defendants, (dkt. nos. 9-23) and the clerk entered their default on December 28, 2010 (dkt. no. 24).  Shortly after, on January 4, 2011, the trustee over plaintiff's bankruptcy estate filed a motion to intervene on the grounds that the claims asserted by plaintiff in this litigation were property of the bankruptcy estate.  (Dkt. Nos. 25, 30.)  The trustee simultaneously moved to dismiss the action, contending that plaintiff lacks standing to bring claims that are property of the bankruptcy estate.  (Dkt. Nos. 27, 29.)  After oral argument and further supplemental briefing, the court ultimately granted the trustee's motion to

intervene, but denied the trustee's motion to dismiss, concluding that plaintiff's claims were not part of the bankruptcy estate. (Dkt. Nos. 62, 68.)[1] In the meantime, several defendants had moved to set aside the entry of default against them. (Dkt. Nos. 36, 38, 39.)

Subsequently, on July 18, 2011, plaintiff filed a motion for leave to file a second amended complaint. (Dkt. No. 71.) Plaintiff contended that further amendment was required to add 10 additional defendants, clarify that plaintiff's complaint included a separate malicious prosecution cause of action for each of the named defendants, remove legal authorities to simplify the complaint, and to add details to the civil conspiracy cause of action. (Dkt. No. 71 at 3.) On August 23, 2011, the court found that plaintiff failed to properly serve process on several defendants. The court also granted plaintiff leave to file a second amended complaint, and ordered plaintiff to complete service of process within 60 days. In light of plaintiff's improper service and the grant of further leave to amend, the court set aside the defaults previously entered. The court additionally cautioned plaintiff that "amendments to the complaint in this case are at an end." (See Dkt. No. 78.) That same day, plaintiff filed a 69-page second amended complaint, followed by another 69-page "corrected" second amended complaint filed on August 24, 2011. (Dkt. Nos. 79, 80.)

On October 8, 2011, plaintiff filed yet another motion for leave to file a third amended complaint. (Dkt. No. 111.) Plaintiff argued that further amendment was necessary to add 6 additional defendants, remove plaintiff's demand for a jury trial, and clean up typographical errors. (Dkt. No. 111 at 3.) Plaintiff explained that he only discovered the identities of additional alleged conspirators in an e-mail attached to defendant Hermanson's purported motion to dismiss, which was filed after plaintiff filed his second amended complaint. (Dkt. No. 111 at 2, 10.) In addition to plaintiff's motion for leave to amend in this case, plaintiff

---

[1] The court's analysis with respect to the trustee's motions is set forth in detail in the court's April 25, 2011 findings and recommendations (see dkt. no. 62), which were adopted by the district judge on June 7, 2011 (see dkt. no. 68).

also filed a new case including the additional defendants in the event this court failed to grant plaintiff leave to amend in the instant case.  (See 2:11-CV-02629-KJM-CKD, Dkt. No. 5 at 3.)[2]

Subsequently, on November 3, 2011, the court granted plaintiff leave to file a third amended complaint, reasoning that the "newly discovered information is sufficient to overcome the court's reluctance to allow another amendment to the complaint."  (Dkt. No. 118 at 2.)  However, the court also noted that, "as plaintiff himself acknowledges, the case needs to move forward, and leave to amend based on this newly discovered information should not be construed as a license for further amendments."  (Dkt. No. 118 at 2-3.)  The court further ordered plaintiff to complete service of process on all defendants, including the newly-added defendants, within 28 days.  (Dkt. No. 118 at 3.)  The court also set a status conference for January 26, 2012 and stayed all discovery until the status conference.  (Dkt. No. 118 at 5-7.)

On November 6, 2011, plaintiff filed the operative 69-page third amended complaint.  (See Dkt. No. 119.)  The third amended complaint joined six additional defendants (Maurine Smith, Judith Cohen, Susan Fine, Kim Parsons, Bobby Hamond, and the Solarte Inn Corporation).  Although all individual defendants were alleged to be citizens of the United States, defendants Smith, Cohen, and Fine, were alleged to reside in the Republic of Panama. (See Dkt. No. 119 at 2-3.)

The subject motions followed.  Before turning to those motions and other substantive matters, the court, as it is required to do, first addresses the issue of federal subject matter jurisdiction.

FEDERAL SUBJECT MATTER JURISDICTION

Even if a party does not question the court's subject matter jurisdiction, the court is required to raise and address the issue sua sponte.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990) ("The federal courts are under an independent obligation to examine

---

[2] Plaintiff's new case was ultimately dismissed as duplicative on January 5, 2012.  (See 2:11-CV-02629-KJM-CKD, Dkt. Nos. 4, 7-8.)

their own jurisdiction...."). In this case, a group of defendants raised the issue in the joint status report by indicating that they dispute federal subject matter jurisdiction based on the presence of U.S. citizen defendants residing abroad. (Dkt. No. 149 at 3.)

The United States Supreme Court held that United States citizens domiciled in a foreign country cannot be parties to a diversity action in federal court. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828-29 (1989). In Newman-Green, Inc., an Illinois corporation brought a state-law contract action in federal district court against a Venezuelan corporation, four Venezuelan citizens, and William L. Bettison, a United States citizen domiciled in Venezuela. Id. at 828. The U.S. Supreme Court explained that Bettison's presence destroyed complete diversity in the action:

> In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State...The problem in this case is that Bettison, although a United States citizen, has no domicile in any State. He is therefore "stateless" for purposes of § 1332(a)(3). Subsection 1332(a)(2), which confers jurisdiction in the District Court when a citizen of a State sues aliens only, also could not be satisfied because Bettison is a United States citizen. When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal...Here, Bettison's "stateless" status destroyed complete diversity under § 1332(a)(3), and his United States citizenship destroyed complete diversity under § 1332(a)(2).

Id. at 828-29 (emphasis in original).

In the instant case, plaintiff alleged that "defendant Maurine E. Smith is a citizen of the United States and resides in the Republic of Panama, defendant Judith A. Cohen is a citizen of the United States and resides in the Republic of Panama, defendant Susan Fine is a citizen of the United States and resides in the Republic of Panama and possibly the state of Oregon." (TAC at 2-3.) While plaintiff acknowledges that the presence of U.S. citizen defendants domiciled abroad would destroy complete diversity, plaintiff argues that residence is not the same as domicile and that there is no evidence that defendants Smith, Cohen, and Fine

are domiciled in Panama.

The Ninth Circuit has established several principles to guide the inquiry of where a party is domiciled:

> First, the party asserting diversity jurisdiction bears the burden of proof...Second, a person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'...Third, the existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed...Finally, a person's old domicile is not lost until a new one is acquired...A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely."...Courts in other jurisdictions have recognized additional principles relevant to our present analysis. The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes...The courts have also stated that domicile is evaluated in terms of 'objective facts,' and that 'statements of intent are entitled to little weight when in conflict with facts.'

Lew v. Moss, 797 F.2d 747, 749-50 (9th Cir. 1986) (internal citations omitted).

Plaintiff correctly points out that domicile is not the same as residency. For example, a United States citizen may be residing in a particular country temporarily for a specific purpose, such as a temporary work assignment, intending to return permanently to a U.S. state after a definite period of time. However, a party's place of residence is prima facie evidence of domicile. State Farm Mut. Automobile Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994). Moreover, in this case, the language of plaintiff's complaint can only be fairly construed as asserting that the above-mentioned defendants are residing in Panama indefinitely. Indeed, the third amended complaint contains no facts suggesting that these defendants are only in Panama on a temporary basis and intend to return to the United States.

\\\\\

As outlined above, the party asserting diversity jurisdiction generally bears the burden of proving a party's domicile to establish complete diversity. Lew, 797 F.2d at 749. However, in reliance on Lew, plaintiff attempts to shift that burden by arguing that there is insufficient evidence that the above-mentioned defendants changed their domicile to Panama. As will be discussed below, plaintiff's reliance on Lew in this regard is misplaced.

In Lew, the plaintiff filed a diversity action against the defendant on November 1, 1984. Lew, 797 F.2d at 748. The defendant conceded facts showing that his established domicile was California at least until September of 1984 when he moved to Hong Kong, but argued that he was domiciled in Hong Kong at the time the action was filed. Id. at 748, 751. The court reasoned that, because the defendant had conceded that he lived in California at least until September of 1984, a presumption in favor of the defendant's established domicile (California) as against his allegedly newly acquired domicile (Hong Kong) applied. Id. at 751. However, the court noted that the presumption only shifted the burden of production of evidence, and that the plaintiff continued to have the burden of proof. Id. Nevertheless, the court found that the defendant failed to meet his burden of production, because his actions failed to establish that he was physically located in Hong Kong on November 1, 1984 or that he intended to remain there indefinitely. Id. at 752.

By contrast, in this case, defendants Smith, Cohen, or Fine have not conceded to any facts showing that they were domiciled in a particular U.S. state until a specified date.[3] Other than plaintiff's conclusory assertions in his current briefing and declaration, there is no clear evidence of these defendants' domicile in a particular U.S. state before the court. Simply put, plaintiff cannot shift the burden of production to these defendants on the basis of a

_____

[3] Plaintiff points out that defendant Cohen stated in her answer that she "does not contend jurisdiction." (Dkt. No. 138 at 1.) This statement, even if construed as asserting that defendant Cohen does not contest subject matter jurisdiction, is irrelevant, because it is well established that subject matter jurisdiction cannot be conferred by consent of the parties. Peretz v. U.S., 501 U.S. 923, 950 (1991).

presumption as to "established domicile," because no such domicile has been established.

Instead, in this case, the burden of production, as well as the burden of persuasion, remain

squarely on plaintiff. Stated differently, it is not defendants Smith, Cohen, or Fine who are

required to show that they are domiciled in Panama or that they changed their domicile to

Panama; it is plaintiff who has to show that these defendants are domiciled in a U.S. state other

than California. Based on plaintiff's allegations in the third amended complaint and the current

evidence before the court, it would appear that these U.S. citizen defendants in Panama destroy

complete diversity.[4]

The court recognizes that defective allegations of jurisdiction may ordinarily be

cured through amendment. See Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1148 (9th Cir.

1998). However, for the reasons outlined below, the court finds that further amendment would

be inappropriate given the posture of this case.

As an initial matter, plaintiff has not shown that he can affirmatively allege,

within the strictures of Rule 11, that the above-mentioned defendants are domiciled in a

particular U.S. state even if he were given leave to amend. "[T]o avoid dismissal for lack of

subject matter jurisdiction, the plaintiff must enlarge the record to show the citizenship of each

party as of the date that the complaint was filed." Blue Ridge Ins. Co., 142 F.3d at 1148. Such

amended allegations must be supported by prima facie proof. Id. at 1148 n.3. Plaintiff's briefing

and declaration make clear that he cannot presently make such a showing.

With respect to defendant Cohen, plaintiff points out that her December 9, 2011

answer to plaintiff's complaint indicated that she "*temporarily* resides in New Jersey," that "[h]er

name is not on any real estate title in the United States nor Panama," and that it makes no

_____

[4] The court is aware that the third amended complaint alleges that "defendant Susan Fine is a citizen of the United States and resides in the Republic of Panama and *possibly the state of Oregon*." (TAC at 3 (emphasis added).) However, the reference to Oregon is speculative and does nothing to assure the court that defendant Fine is a diverse defendant. Again, it is plaintiff's burden to show that defendant Fine is domiciled in a U.S. state other than California.

reference to Panama residency or domiciliary. (See Dkt. No. 138 (emphasis added).) Plaintiff also states that, to the best of his knowledge, defendant Cohen "was living in and domiciled in Nevada prior to moving to Panama and currently resides in New Jersey." (Dkt. No. 162 at 3, 11.) As to defendant Smith, plaintiff states that:

> To the best of my knowledge, when I met Maurine Smith, in approximately 1995, she was a citizen of Nevada and residing in Nevada. She was domiciled in Nevada, she then moved to California, was married and later divorced. Her location in California changed a number of times. To the best my knowledge [sic], Smith never changed domicile from Nevada. Defendant Maurine Smith is a citizen of the United States and resides in the Republic of Panama *possibly part-time. I know of no evidence that supports Maurine Smith is domiciled in Panama.*

(Dkt. No. 162 at 3-4, 11 (emphasis added).) Finally, in regards to defendant Fine, plaintiff asserts that she is domiciled in *either Colorado or Oregon* and has built a home on her lot in Panama. Plaintiff also refers to *March 7, 2007 deposition testimony* where defendant Fine indicated that she spends six months a year on Solarte in Panama. Plaintiff indicates that he knows of no evidence that defendant Fine is domiciled in Panama. (Dkt. No. 162 at 4-5, 12 (emphasis added).)

As is evident from the above, plaintiff's contentions are conclusory and largely speculative. Once a disputed issue, evaluation of domicile becomes a complicated analysis of various factors, including residence, voting patterns, location of assets, etc. Plaintiff offers no prima facie proof regarding these factors, nor any evidence that he has conducted any type of informal investigation regarding these factors. Indeed, plaintiff offers no prima facie proof, other than his own conclusory assertions, that establish these defendants' domicile in a particular U.S. state at the time they were joined as parties to this litigation. Plaintiff implicitly concedes as much, because he requests the court to grant jurisdictional discovery or alternatively to continue this matter "in the event sufficient evidence surfaces" regarding these defendants' domiciles. (Dkt. No. 162 at 9.)

\\\\\\

While the court may have been inclined to grant plaintiff leave to conduct jurisdictional discovery regarding domicile in the first few months after the action was filed, the court finds that it would be wholly inappropriate at this junction. As the court extensively outlined above, this action has already been pending since July 23, 2010, the pleadings are not settled, and the case has not yet been scheduled for trial. This is primarily because the court, in light of plaintiff's pro se status, has given plaintiff multiple opportunities to amend his complaint. However, at some point, amendment must come to an end and the case must proceed.

The court was prepared to give plaintiff the benefit of the doubt by allowing the recent joinder of additional defendants based on alleged newly discovered evidence, but not if this would result in multiple ancillary disputes as to domicile and destroy complete diversity. Allowing plaintiff to now embark on jurisdictional discovery as to domicile will further derail this case, because the case cannot proceed until the court can be assured of the propriety of subject matter jurisdiction. It would also necessarily result in evidentiary hearings and further amendment of the complaint, which the court already held will not be countenanced. These additional delays will significantly prejudice the defendants, who deserve to proceed to the merits and have their day in court as well.

Based on the record currently before the court, the joinder of defendants Smith, Cohen, and Fine destroy complete diversity. Although this could result in dismissal of the entire case for lack of subject matter jurisdiction, a less drastic remedy is available here. A court may, in the absence of prejudice to the other parties, dismiss dispensable nondiverse parties pursuant to Fed. R. Civ. P. 21 to cure the jurisdictional defects. Newman-Green, Inc., 490 U.S. at 833, 837-38. Fed. R. Civ. P. 21 provides, in part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Here, the above-mentioned defendants are not indispensable parties. Therefore, the court will recommend that plaintiff's claims against defendants Judith Cohen, Maurine Smith, and Susan Fine be dismissed without prejudice pursuant to Fed. R. Civ. P. 21.

In the interests of efficiency, and assuming that any defects in subject matter jurisdiction are cured by the court's recommendation above, the court proceeds to the motions and other matters pending before the court.

DEFENDANT THOMAS'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

Background

The third amended complaint contains limited allegations specific to defendant Thomas, which are set forth here. Plaintiff alleges that Thomas is a citizen of Colorado. (TAC at 2.) In September, 2005, with the assistance of defendant David Miner, Thomas retained the services of a Panamanian attorney, defendant Rojelio Arosemena, and made a declaration in support of a criminal complaint against plaintiff. (TAC at 50.) Then, on October 3, 2005, Arosemena filed an allegedly false declaration (denunciation) and criminal complaint against plaintiff in Panama on Thomas's behalf. (TAC at 50-51.) Subsequently, in April, 2006, again with the assistance of Miner, Thomas retained another Panamanian attorney, defendant Manuel Berrocal, with "the sole purpose to acquire the title to our land and finalize our lawsuits and/or criminal complaints through an amicable agreement." (TAC at 51.) After the Panama court purportedly dismissed Thomas's criminal case in April, 2008, Thomas appealed, but the Panama appellate court apparently ultimately upheld the dismissal and found in favor of plaintiff. (TAC at 51-52.) Plaintiff contends that Thomas falsely and maliciously instituted a criminal action against plaintiff without probable cause. (TAC at 52.)

On December 8, 2011, Thomas filed a motion to dismiss plaintiff's third amended complaint for lack of personal jurisdiction. (Dkt. No. 131.) In support of that motion, Thomas filed an affidavit stating that she has never been a resident of California; does not conduct business or travel regularly to California; has never owned or possessed property in California; has never paid taxes in California; has never had a bank account in California; has never registered to vote in California; has never been employed in California; has never done business

with an entity in California; has never had a telephone, address, or postal listing in California; has never made a court appearance in California; and has never posted any messages on any public Internet site regarding plaintiff or his activity in Panama, nor has she encouraged or approved of any such messages that may have been posted by anyone else.  (See Dkt. No. 132-1, ¶¶ 1-7, 9.)

Thomas also stated that she had taken no action in California with respect to plaintiff's allegations – the underlying property dispute between herself and plaintiff was over property located in Panama, the negotiation and agreement for purchase and sale of the property occurred in Panama, and the alleged malicious prosecution at issue was the filing of a criminal complaint against plaintiff in Panama.  (Id. ¶ 8.)  She further explained that litigation in California would be an extreme hardship to her, given her diagnosis of Stage III C ovarian cancer and the fact that her medical condition and treatment would make it difficult, if not impossible, to travel to California for deposition and trial.  (Id. ¶ 10.)

Plaintiff filed a 42-page opposition to defendant Thomas's motion along with numerous multi-page exhibits, declarations, and requests for judicial notice.  (Dkt. Nos. 158, 158-1, 158-2, 158-3, 158-4, 158-5, 159, 159-1, 159-2, 159-3, 160, 160-1, 160-2, 160-3, 160-4, 161, 163).[5]  Subsequently, on February 24, 2012, plaintiff also filed a motion to continue decision on defendant Thomas's motion (dkt. no. 168) to allow plaintiff to submit full deposition transcripts in accordance with the Local Rules, remedy the objections raised by defendant Thomas with respect to plaintiff's evidence submitted, and for the court to conduct an oral hearing on the motion.

The court has reviewed all of the material submitted by plaintiff.  For the reasons discussed below, the court concludes that plaintiff has not made a colorable showing that this

---

[5] Plaintiff's briefing in support of his motion for leave to conduct jurisdictional discovery regarding defendant Thomas (dkt. nos. 143, 150) also offered facts, exhibits, and argument with respect to personal jurisdiction over defendant Thomas.

court has personal jurisdiction over defendant Thomas, even if all plaintiff's submitted evidence were considered.  Accordingly, it is not necessary to reach defendant Thomas's objections.  Furthermore, given the extensive briefing and voluminous exhibits submitted by plaintiff, the court finds that further oral argument on this already-submitted motion would not be of material assistance.  Accordingly, the court will proceed to decide the motion on the record before it.

Principles of Personal Jurisdiction

The plaintiff generally bears the burden of establishing the district court's personal jurisdiction over the defendant.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003).  "A non-resident defendant may be subject to the personal jurisdiction of the court where the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice' (specific jurisdiction)."  Martinez v. Manheim Central California, 2011 WL 1466684, at *1 (E.D. Cal. Apr. 18, 2011) (citing Int'l Shoe Co. v. Washington, 325 U.S. 310, 316 (1945)).  "Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court is located."  Id. (citing Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).  "California law requires only that the exercise of personal jurisdiction comply with federal due process requirements."  Id. (citing Cal. Civ. Proc. Code § 410.10 and Fred Martin Motor Co., 374 F.3d at 800-01).

General personal jurisdiction exists when the defendant engages in "continuous and systematic general business contacts...that approximate physical presence in the forum state."  Fred Martin Motor Co., 374 F.3d at 801.  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."  Id.; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

Alternatively, "[s]pecific personal jurisdiction exists where a case arises out of forum-related acts." Martinez, 2011 WL 1466684, at *2. The Ninth Circuit utilizes a three-prong test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205-06 (9th Cir. 2006). "The plaintiff bears the burden of satisfying the first two prongs of the test...If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." Fred Martin Motor Co., 374 F.3d at 802 (internal citations omitted).

### Discussion

In this case, the parties agree that this court cannot exercise general personal jurisdiction over defendant Thomas. It is clear that she does not have the requisite continuous and systematic contacts with California that approximate a physical presence. Instead, plaintiff claims that the court has specific personal jurisdiction over defendant Thomas. The court therefore proceeds to analyze plaintiff's claim under the Ninth Circuit's three-prong test for specific personal jurisdiction. Yahoo! Inc., 433 F.3d at 1205-06.

### First Prong of the Specific Personal Jurisdiction Test: Purposeful Direction

Under the first prong, a plaintiff "must establish that [the defendant] either purposefully availed [herself] of the privilege of conducting activities in California, or purposefully directed [her] activities toward California...A purposeful availment analysis is most

often used in suits sounding in contract...A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Fred Martin Motor Co., 374 F.3d at 802; see also Yahoo! Inc., 433 F.3d at 1206. Here, given plaintiff's tortious claims of malicious prosecution and civil conspiracy to commit malicious prosecution, plaintiff correctly asserts that a purposeful direction analysis should be utilized in this case. Indeed, defendant Thomas did not enter into a contract or conduct business in California, and she received no benefit, privilege, or protection from California that would be susceptible to a purposeful availment analysis. Accordingly, a purposeful direction analysis is appropriate.

The Ninth Circuit evaluates purposeful direction under the three-part "effects" test outlined in the U.S. Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). Fred Martin Motor Co., 374 F.3d at 803; Yahoo! Inc., 433 F.3d at 1206. In Calder, the plaintiff sued Florida-based defendants in a California court claiming that she had been libeled in an article written and edited in Florida and then published in a national magazine with a large circulation in California. Calder, 465 U.S. at 784. In finding that the California court had personal jurisdiction over the Florida defendants, the U.S. Supreme Court explained that:

> The alleged libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm...was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over [the defendants] is therefore proper in California based on the "effects" of their Florida conduct in California.

Id. at 788-89. The Supreme Court further stated that the defendants knew that the article would have a devastating impact upon plaintiff in California, given that she lives and works there and that the magazine has its largest circulation in that state. Id. at 789-90.

Thus, "Calder stands for the proposition that [the first prong of the test for specific jurisdiction] is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." Fred Martin Motor

16

Co., 374 F.3d at 803 (internal citations omitted).  To find purposeful direction under Calder, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Id.; see also Yahoo! Inc., 433 F.3d at 1206.

In this case, plaintiff essentially points to two types of contacts by defendant Thomas that he contends support purposeful direction: (1) the filing of a criminal action in Panama against plaintiff and (b) internet postings and communications directed to California by defendants Miner, Fine, Berrocal, and Arosemena purportedly acting as Thomas's agents.  Both types of contacts will be addressed below.

*(1) Criminal Action in Panama*

Plaintiff argues that purposeful direction is shown by Thomas's filing of a criminal action against plaintiff, a California resident, resulting in various alleged damages suffered in California, including plaintiff having to file bankruptcy in California, losing 35 years worth of work and savings in California, owing creditors approximately $3.5 million in California, damages to plaintiff's reputation in California, damage to plaintiff's credit in California, and forcing plaintiff to close his business in California.  (See Declaration of Shepard Johnson, Dkt. No. 143-1, ¶¶ 25-26.)  Additionally, plaintiff states that the title to Thomas's property in Panama was eventually controlled by a California bankruptcy trustee after plaintiff declared bankruptcy.  (Id. ¶ 27.)

Even though Thomas's filing of a criminal action is clearly an intentional act and Thomas arguably could have foreseen that plaintiff would suffer some harm in California, plaintiff fails to show how Thomas's criminal action was expressly aimed at California.  To the contrary, Thomas allegedly filed the criminal action and supporting declaration in Panama to pressure plaintiff into issuing her title without restrictions to her Panamanian property.

The mere fact that plaintiff may have suffered some resulting damages in California is insufficient to show that the action was expressly aimed at California so as to

establish the requisite minimum contacts. "Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a sufficient benchmark for exercising personal jurisdiction." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (internal citations omitted); see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) ("Subsequent cases have struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction"); Brayton Purcell LLP v. Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010) ("This Court has emphasized that 'something more' than mere foreseeability is required in order to justify the assertion of personal jurisdiction,...and that 'something more' means conduct expressly aimed at the forum....").

In support of plaintiff's proposition that Thomas's criminal action was expressly aimed at California, plaintiff cites various Ninth Circuit authorities holding that the express aiming requirement is satisfied when the defendant individually targeted a known forum resident. See e.g. Bancroft & Masters, Inc., 223 F.3d at 1087; Yahoo! Inc., 433 F.3d at 1209; Brayton Purcell LLP, 606 F.3d at 1129-31. However, in each of those cases, the defendant's wrongful conduct had individually targeted the plaintiff's business, activities, or presence in California.

In Bancroft & Masters, Inc., the plaintiff was a small California company that had registered an Internet domain name. Bancroft & Masters, Inc., 223 F.3d at 1084. The Georgia-based defendant sent a letter to the official domain name registrar in Virginia, challenging the plaintiff's use of that domain name. Id. at 1085. Subsequently, the plaintiff sought a declaratory judgment against the defendant in a California district court to establish ownership of the domain name. Id. The Ninth Circuit ultimately concluded that personal jurisdiction existed over the defendant, even though the letter was never sent to California. Id. at 1085, 1087-88. It reasoned that the letter was expressly aimed at California, because it individually targeted plaintiff's

business in California.  <u>Id</u>. at 1088.  This is because the letter triggered the registrar's dispute resolution procedures, which forced plaintiff to either bring suit or lose control of its website.  <u>Id</u>. at 1085, 1087.  Thus, the letter was sent "for the very purpose of having [its] consequences felt" on the plaintiff's business in California.  <u>Id</u>. at 1088.

In <u>Yahoo! Inc.</u>, plaintiff Yahoo! brought suit in federal district court against two French entities seeking a declaration that two interim orders by a French court were unenforceable under the First Amendment.  <u>Yahoo! Inc.</u>, 433 F.3d at 1201.  The French court orders required Yahoo! to take measures to prohibit access from French territory to websites or services that sell Nazi artifacts or evoke Nazism and related topics.  <u>Id</u>. at 1202-03.  In finding personal jurisdiction over the French entities, the Ninth Circuit stated that the French entities' lawsuit in France was expressly aimed at California, because it sought, and the French court granted, orders directing the plaintiff "to perform significant acts in California."  <u>Id</u>. at 1209.  The court reasoned that, although the effect desired by the French court would be felt in France, compliance with the court's orders would necessarily require Yahoo! to make changes to its servers in California.  <u>Id</u>.

<u>Brayton Purcell LLP</u> actually involved a venue dispute in a copyright infringement action.  The court nonetheless applied principles of personal jurisdiction because, in copyright infringement actions, the Ninth Circuit has interpreted the venue provision to allow venue "in any judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction."  <u>Brayton Purcell LLP</u>, 606 F.3d at 1126 (citing 28 U.S.C. § 1400(a)).  In that case, the plaintiff, a Northern California law firm specializing in elder abuse law, sued defendant, a Southern California law firm, in the U.S. District Court for the Northern District of California alleging that the elder law section of defendant's website consisted entirely of material copied verbatim from the plaintiff's own website.  <u>Id</u>. at 1126-27.  Although the defendant never had any clients or property in the Northern District, the Ninth Circuit nevertheless found that the defendant could be subject to personal jurisdiction in the Northern District.  <u>Id</u>. at 1126.  The

court explained that defendant's attorneys were admitted to practice throughout California, the number of law firms specializing in elder abuse law were few, and that the defendant, by the alleged infringement, targeted the plaintiff's business and entered into direct competition with the plaintiff in the Northern District.  Id. at 1130-31.  As such, the court held that the express aiming requirement was satisfied.  Id. at 1131.

In this case, by contrast, Thomas's criminal action in Panama did not individually target the plaintiff's business or activities *in California*.  The action was filed in Panama, concerned a Panama property dispute, and challenged plaintiff's Panama activities.  By filing and prosecuting the criminal action, Thomas allegedly targeted plaintiff with respect to his property development and reputation in Panama, not California.[6]  Therefore, Panama was the focal point of the litigation, and any resultant harm suffered in California is incidental.  As the Ninth Circuit observed in Fred Martin Motor Co.:

> It may be true that Fred Martin's intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may have known that Schwarzenegger lived in California.  But this does not confer jurisdiction, for Fred Martin's express aim was local.

Fred Martin Motor Co., 374 F.3d at 807.  In light of the above, the court concludes that Thomas's criminal action against plaintiff in Panama was not expressly aimed at California.  Accordingly, it does not support a finding of purposeful direction.

\\\\\

\\\\\

---

[6] Plaintiff submitted a copy of an authorization, presumably prepared by the law firm of Bufete Berrocal in Panama, for plaintiff to release documents concerning Thomas's investment in the Panama property.  (See Dkt. No. 150-1, Ex. D; Dkt. No. 158-5 at 48.)  The authorization was apparently signed by Thomas and sent to plaintiff in California.  To the extent plaintiff claims that service of process and other papers related to the Panama action on plaintiff in California confers personal jurisdiction over Thomas, that argument is without merit.  See Yahoo! Inc., 433 F.3d at 1209 ("We do not regard the service of documents in connection with a suit brought in a foreign court as contacts that by themselves justify the exercise of personal jurisdiction over a foreign litigant in a United States court.")

*(b) Internet postings and communications directed to California by defendants Miner, Fine, Berrocal, and Arosemena purportedly acting as Thomas's agents*

Plaintiff further contends that several defendants, including defendants Miner, Fine, Berrocal, and Arosemena, sent various extortionate e-mails to plaintiff in California and/or posted numerous defamatory messages on sites maintained in California and accessible by third parties in California. Plaintiff claims that defendants Miner, Fine, Berrocal, and Arosemena acted as agents for Thomas with respect to these alleged communications, and that these communications therefore establish purposeful direction by Thomas.

However, this assertion is entirely speculative and conclusory, and plaintiff fails to provide evidence that even remotely tends to support this contention. Generally "[a]gents can bind their principals only if they have actual or apparent authority to do so." Hanson v. America West Airlines, Inc., 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) (citing Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co., 414 F.2d 750, 755 (9th Cir. 1969)). "Actual authority may be either express or implied...If a principal specifically authorizes an agent to act, the agent has express authority to take that action...If a principal merely states the general nature of what the agent is to do, the agent is said to have implied authority to do acts consistent with the direction." Id. (internal citations omitted). "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." Id.

Defendants Berrocal and Arosemena may have had the actual and apparent authority under a Panama power of attorney (see dkt. no. 158-3 at 33-34) to represent Thomas with respect to the Panama criminal action; defendant Miner may have initially introduced Thomas and other defendants to these attorneys; and defendants Miner, Fine, and Berrocal may have sent updates to the other defendants regarding the Panama criminal action. Indeed, these defendants may well have communicated and shared ideas for purposes of the litigation in Panama. However, plaintiff has offered no evidence that defendant Thomas actually authorized

any of these purported agents to act on her behalf *in any conduct expressly aimed at California*. Nor has plaintiff provided evidence that Thomas made representations of such authority to plaintiff or a third party, resulting in apparent authority. To the contrary, Thomas in her affidavit expressly denies engaging in or authorizing communications or website postings directed at California regarding plaintiff or his activities in Panama. (See Dkt. No. 148 at 12, ¶ 9.)

Apart from bare allegations in the face of defendant's specific denials, plaintiff has not come forth with even a minimal showing of evidence to support his agency theory. Plaintiff has submitted copious documents and e-mails authored by defendants Miner, Fine, and others potentially directed at California, but none of the e-mails were authored by defendant Thomas. Furthermore, any suggestions by Miner and/or Fine that they were representing the other defendants in communications directed at California are irrelevant, because agency is established by the manifestations of the principal – not the manifestations of the purported agent(s).[7]

Each defendant's contacts with the forum state must be assessed on an individual basis. See Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe*...must be met as to each defendant"). Accordingly, the alleged actions of defendants Miner, Fine, Berrocal, and Arosemena do not support a finding of purposeful direction on the part of defendant Thomas.

Other Prongs of the Specific Personal Jurisdiction Test

"The plaintiff bears the burden of satisfying the first two prongs of the test...If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Fred Martin Motor Co., 374 F.3d at 802. Because plaintiff has failed to present any

---

[7] Additionally, even if defendant Thomas were copied on some e-mails by other defendants sent to plaintiff in California and failed to object to stray comments made about plaintiff in such e-mails, the court finds that this, in the absence of affirmative conduct or encouragement by Thomas, is woefully insufficient to establish agency or any type of purposeful direction.

actual evidence of purposeful direction by Thomas, the court does not reach the remaining two factors of the specific personal jurisdiction test. The court finds that it does not have personal jurisdiction over defendant Thomas.

<u>Plaintiff's Request for Jurisdictional Discovery</u>

As noted above, plaintiff also filed a motion for leave to conduct jurisdictional discovery regarding defendant Thomas, which is currently under submission. (Dkt. No. 143.) The court must therefore decide whether plaintiff is entitled to a further opportunity to generate potential evidence that this court has personal jurisdiction over defendant Thomas.

"In considering a motion to dismiss for lack of personal jurisdiction, a court may either postpone the decision and permit discovery, determine the motion on the basis of the pleadings and affidavits, or hold an evidentiary hearing." <u>Martinez v. Manheim Central California</u>, 2011 WL 1466684, at *3 (E.D. Cal. Apr. 18, 2011) (citing <u>Data Disc, Inc. v. Systems Technology Associates, Inc.</u>, 557 F.2d 1280, 1285 (9th Cir. 1977)). "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" <u>Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.</u>, 788 F.2d 535, 540 (9th Cir. 1986) (quoting <u>Data Disc, Inc.</u>, 557 F.2d at 1285 n.1)). However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." <u>Terracom v. Valley Nat'l Bank</u>, 49 F.3d 555, 562 (9th Cir. 1995) (quoting <u>Rich v. KIS Cal., Inc.</u>, 121 F.R.D. 254, 259 (M.D.N.C. 1988). "In other words, limited discovery should not be permitted to conduct a 'fishing expedition.'" <u>Martinez</u>, 2011 WL 1466684, at *3 (citing <u>Rich</u>, 121 F.R.D. at 259).

"Although there is no definitive Ninth Circuit authority specifically addressing the level of showing that a plaintiff must make to be entitled to jurisdictional discovery, district courts in this circuit have required a plaintiff to establish a 'colorable basis' for personal

jurisdiction before discovery is ordered." Martinez, 2011 WL 1466684, at *4 (citing Mitan v. Feeney, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)); eMag Solutions, LLC v. Toda Kogyo Corp., 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006); and Chapman v. Krutonog, 256 F.R.D. 645, 649 (D. Haw. 2009). "This 'colorable' showing should be understood as something less than a prima facie showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." Mitan, 497 F. Supp. 2d at 1119 (internal citations omitted).

Here, for the reasons discussed above, plaintiff has not made even a colorable showing that this court has personal jurisdiction over defendant Thomas. Indeed, plaintiff's motion appears to be a thinly-veiled request to conduct full-blown discovery on the merits. Plaintiff seeks leave to depose Thomas and obtain documents regarding the criminal charges she filed against plaintiff in Panama, the evidence in support of those charges, and the communications between Thomas and Miner, Berrocal, Arosemena, and the "prosecutor" in Panama. (Dkt. No. 150 at 14, ¶¶ 43-49.) Furthermore, plaintiff requests leave to conduct discovery regarding Thomas's "communications with fellow co-conspirators/defendants referencing at California and Johnson" as well as Thomas's "communications with active websites and Internet groups that included California residents." (Dkt. No. 150 at 14-15, ¶ 49.) This amounts to no more than a request "to fish on a hunch that something might be caught in a widely-cast net." Martinez, 2011 WL 1466684, at *5; see also Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding that denial of discovery is not an abuse of discretion when it is "based on little more than a hunch that it might yield jurisdictionally relevant facts"). Therefore, the court concludes that further jurisdictional discovery is unwarranted.

Dismissal or Transfer of Claims against Defendant Thomas

Finally, in light of the court's conclusion that it lacks personal jurisdiction over defendant Thomas, the only issue remaining is whether plaintiff's claims against defendant Thomas should be dismissed or transferred to the District of Colorado where Thomas resides. 28

U.S.C. § 1631 provides that:

> Whenever a civil action is filed in a court...and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action...to any other such court in which the action...could have been brought at the time it was filed...and the action...shall proceed as if it had been filed in...the court to which it is transferred on the date upon which it was actually filed in...the court from which it is transferred.

In this case, the court cannot transfer the entire action to the District of Colorado, because it is obvious that the Colorado district court would lack personal jurisdiction over several of the other defendants.

The Circuits are split regarding whether the language of 28 U.S.C. § 1631 permits federal courts to partially transfer an action. See United States v. County of Cook, Ill., 170 F.3d 1084 (Fed. Cir. 1999) (approving transfer of some, but not all, claims); FDIC v. McGlamery, 74 F.3d 218, 222 (10th Cir. 1996) (finding transfer of some claims appropriate only after a Rule 21 severance); Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C. Cir. 1986) (finding the statute authorizes the transfer of an action, not a claim). Even within the same circuit, cases have not always been consistent. The Tenth Circuit recently stated that, although transfer was a discretionary option under 28 U.S.C. § 1631 to cure deficiencies related to personal jurisdiction, it was "aware of no authority even permitting, much less requiring, a district court to unilaterally split up an action and transfer the resultant components to diverse jurisdictions under the auspices of § 1631." Schrader v. Biddinger, 633 F.3d 1235, 1249-50 (10th Cir. 2011). However, Schrader curiously cited to an earlier Tenth Circuit decision, Trujillo v. Williams, 465 F.3d 1210 (10th Cir. 2006), which actually held that the district court had discretion to sever and transfer a plaintiff's claims against Virginia-based defendants from his claims against New Mexico-based defendants, or to dismiss the claims against the Virginia-based defendants, to cure jurisdictional defects. Id. at 1216. Indeed, in Trujillo, because the district court had not indicated its reasons for dismissing as opposed to transferring the claims, the Tenth Circuit remanded the case for a specific determination of whether the plaintiff's claims against the Virginia defendants should be

transferred rather than dismissed under the federal transfer statutes.  Id. at 1222-23.

While the Ninth Circuit has not squarely addressed the issue, it implicitly recognized that a portion of a case could be transferred.  See e.g. Baeta v. Sonchik, 273 F.3d 1261, 1264 (9th Cir. 2001) ("Under the circumstances presented, transfer of the portion of the habeas petition raising nationality allegations to this Court is appropriate."); see also Nelson v. International Paint Co., 716 F.2d 640, 642 (9th Cir. 1983).  Additionally, the court agrees with the rationale of the Federal Circuit in allowing transfer of individual claims:

> The United States suggests no logical reason why this remedy should not be allowed on a claim-by-claim basis.  It would indeed be a curious result that a district court could transfer an action under § 1631 containing a single claim over which it lacked jurisdiction but could not transfer that claim if the claimant made an additional claim in his action over which the court did have jurisdiction.  We see no reason to deny the remedial benefit of § 1631 in this circumstance merely because some of the claims were properly lodged in the transferor court.

County of Cook, Ill., 170 F.3d at 1089.  Furthermore, in the event a Rule 21 severance[8] is technically required before transfer of individual claims so as to result in the transfer of an "action," see 28 U.S.C. § 1631 and McGlamery, 74 F.3d at 222, the court has no difficulty doing so here.  Defendant Martha Thomas is not an indispensable party to this action, and plaintiff's claims against her can be severed if necessary to prevent prejudice.  See Pamplona v. Hernandez, 2009 WL 578578, at * 3 (S.D. Cal. March 5, 2009).

Thus, the only question is whether transfer would be in the interest of justice.  "When determining whether transfer is in the interest of justice, courts have considered whether the failure to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors."  Cruz-Aguilera v. INS, 245 F.3d 1070, 1074 (9th Cir. 2001).  "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating."  Baeta v.

---

[8] Fed. R. Civ. P. 21 provides, in part, that "[t]he court may also sever any claim against a party."

1  Sonchik, 273 F.3d 1261, 1264-65 (9th Cir. 2001).  This principle applies with even greater force

2  when a claim would be time-barred without a transfer.  Id.

3          In this case, it is clear that plaintiff did not have a sufficient basis for bringing his

4  claims against defendant Thomas in this district.  Nevertheless, given plaintiff's pro se status, the

5  court cannot confidently conclude that plaintiff acted in bad faith.  Moreover, a failure to transfer

6  would prejudice plaintiff, because the statute of limitations would likely bar refiling the claims

7  against defendant Thomas in Colorado.

8          For these reasons, the court will recommend that defendant Thomas's motion to

9  dismiss for lack of personal jurisdiction be granted in part and that plaintiff's claims against

10 Thomas be severed under Fed. R. Civ. P. 21 and transferred to the United States District Court

11 for the District of Colorado.

12 ORDER TO SHOW CAUSE REGARDING SERVICE OF PROCESS

13          On November 3, 2011, when the court granted plaintiff leave to file his third

14 amended complaint, the court also ordered plaintiff to complete service of process on all

15 defendants within 28 days.  (Dkt. No. 118.)  The court's specific order superseded the default

16 time limits for service of process outlined in Fed. R. Civ. P. 4.  Consequently, when the January

17 12, 2012 joint status report indicated that service of process was not completed, the court issued

18 its January 27, 2012 order to show cause why defendants Rogelio Arosemena, Manuel Berrocal,

19 Peter Reinhold, Maurine Smith, Susan Fine, Kim Parsons, and Solarte Inn Corporation should

20 not be dismissed from the action pursuant to Fed. R. Civ. P. 41(b) for plaintiff's failure to

21 prosecute and follow court orders regarding service of process.  (Dkt. No. 154.)

22          The court has reviewed plaintiff's response and concludes that plaintiff has been

23 making substantial efforts to serve the above-mentioned individuals.  Accordingly, the order to

24 show cause will be discharged and plaintiff will be permitted an additional 60 days to complete

25 \\\\\

26 \\\\\

service of process.[9]  However, plaintiff is hereby put on notice that the court will recommend dismissal of any defendants not yet served with process upon expiration of the 60-day period. Contrary to plaintiff's contention, this is not a "young" case – it was originally filed in July 23, 2010 and the only reason no scheduling order is in place is because the court has thus far liberally allowed plaintiff to amend his complaint.  It may be that some defendants prove difficult or virtually impossible to locate and serve, but this case must now move forward.

MISCELLANEOUS

In its February 4, 2011 order granting plaintiff leave to file electronically, the court stated that it would "carefully monitor plaintiff's filings to assess their reasonableness. Should the court discern any unreasonably expansive filings, either in number or volume, this order will be vacated."  (Dkt. No. 52.)  The court finds that plaintiff's number and volume of filings have been excessive.  For example, with respect to defendant Thomas's motion to dismiss and plaintiff's associated request for leave to conduct jurisdictional discovery alone, plaintiff has submitted an approximate total of 667 pages for the court's review.  This has imposed a significant burden on the court's resources.  Accordingly, the court determines that it is appropriate to limit plaintiff's future filings.

In particular, plaintiff shall have no more than one motion pending on the court's docket at any given time (exclusive of motions brought by other parties), unless otherwise ordered by the court.  Any memorandum of points and authorities in support of or in opposition to a motion shall be no longer than 25 pages with a font size of 12 Times New Roman (or equivalent font) and shall not include single spacing except for block quotes.  Any filings exceeding these limitations will be stricken.  While the court is not imposing a limitation on the number of exhibit pages, plaintiff is cautioned to append only the exhibits which are really

[9] Of course, this does not affect the court's recommendation that defendants Smith and Fine should be dismissed along with defendant Cohen pursuant to Fed. R. Civ. P. 21 to cure jurisdictional defects.

necessary to support a position.  Plaintiff is also cautioned that further excessive filing (in number or volume) will result in revocation of plaintiff's electronic filing privileges.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1.  Plaintiff's motion to continue a decision on defendant Thomas's motion to dismiss (dkt. no. 168) is denied.

2.  Plaintiff's motion for leave to conduct jurisdictional discovery regarding defendant Thomas (dkt. no. 143) is denied.

3.  The order to show cause regarding service of process (dkt. no. 154) is discharged.  Plaintiff is granted a final 60-day period within which to complete service of process on all defendants.  Failure to complete service of process within this period will result in a recommendation that the unserved defendants be dismissed from the case.

4.  Plaintiff's future filings are limited as follows: plaintiff shall have no more than one motion pending on the court's docket at any given time (exclusive of motions brought by other parties), unless otherwise ordered by the court.  Any memorandum of points and authorities in support of or in opposition to a motion shall be no longer than 25 pages with a font size of 12 Times New Roman (or equivalent font) and shall not include single spacing except for block quotes.  Any filings exceeding these limitations will be stricken.  Further excessive filing (in number or volume) will result in revocation of plaintiff's electronic filing privileges.

IT IS ALSO HEREBY RECOMMENDED THAT:

1.  Plaintiff's claims against defendants Judith Cohen, Maureen Smith, and Susan Fine be dismissed without prejudice pursuant to Fed. R. Civ. P. 21.

2.  Defendant Martha Thomas's motion to dismiss for lack of personal jurisdiction (dkt. no. 131) be granted in part, plaintiff's claims against Thomas be severed pursuant to Fed. R. Civ. P. 21, and these claims be transferred to the United States District Court for the District of Colorado.

1    These findings and recommendations are submitted to the United States District

2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3 (14) days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served and filed within seven (7) days after service of the objections.  The parties are

7 advised that failure to file objections within the specified time may waive the right to appeal the

8 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9 DATED: March 2, 2012

10                              /s/ Gregory G. Hollows
                        UNITED STATES MAGISTRATE JUDGE

11 GGH/wvr
   Johnson.1968.smj-pj.fr.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26